Good morning, Your Honors, and may it please the Court, my name is Robert Burke, B-E-R-K-E for the petitioner Arturo Lara-Aguilera. With the Court's permission, if necessary, I'd like to reserve two minutes for rebuttal. Keep your eye on the clock, it counts down. I'll be watching. Thank you, Your Honor. Your Honor, I think the very first issue, both in the order of the briefs but also in order of the arguments, is whether this Court has jurisdiction to hear the motion to terminate. Whether this Court has jurisdiction to review the Board's decision that it didn't have jurisdiction to consider the equitable estoppel argument as to why the judge should not have granted the government's motion to terminate. This Court has a number of cases where it's rejected jurisdiction to question the Board's or the Immigration Court's authority to grant the motion to terminate, but all those cases seem to have one factor in common, and that is there was an executed prior order of deportation or order of removal. It had been executed, which would mean that the government would have to reinstate that old order before it could execute that order again. Do you disagree that we have jurisdiction only over a final order of removal under 1252? It says over a final order of removal. That's true. There are two points that I want to make to that. First of all, here, the Alcala case and the Galindo-Romero case make that distinction, and they make it very explicitly, it's not implicit in these decisions, that they're reaching those decisions because there's still a process that has to be gone through before the final order of removal can be executed. But here there is a final order of removal somewhere, but this termination order wasn't a final order of removal. Do you agree with that, that the termination of a proceeding as improvidently commenced wasn't a final order of removal? Disagreement may be the wrong term, but it's the one I'm going to choose. I do disagree with that because the effect of this termination is that order of deportation, that old order of deportation, becomes absolutely executable on the spot the minute that termination was granted. There's no intervening process. In other words, a final order of removal had been issued and was still standing. Was out there. And is there a precedent saying that when there was an erroneous commencement of a subsequent proceeding that that did something, that that somehow stayed the prior order of removal? Or what's your view that happened when the proceedings erroneously commenced? The ERO won't execute an order of deportation. This wasn't an ERO. This was just a regular old final order of removal. That's right. But it can't be executed while the alien is still in removal proceedings. In other words, while the— Do you have a case that says that? Because these were erroneously commenced. Right. And I don't have a case to cite that or even a citation to the reg, only experienced to rely on that they won't execute an outstanding order of deportation while there's a court or judicial process that still has jurisdiction. It's an agency dispute. You've got EOIR under USDOJ. You've got ERO under DHS. So while the court has jurisdiction, as a general proposition without being able to cite your chapter and verse, neither ICRO nor even in many instances USCIS will take an action while the jurisdiction over it lies with the court. Now, in this particular instance, don't forget, Your Honor, we had a representation being made by ICE that they were not going to use the old order of deportation. What was that representation? That was on the Form I-213, where it said we're aware that there's an old outstanding order of deportation, but we're opting to proceed by issuing a new NTA anyway. And that is a paraphrase. And where is that in the record? That you could find attached to my motion to reopen. And I believe, and if not there, then at least on my motion opposing the government's motion to terminate. Do you have an AR site for that? I'm certain I do. Yeah, absolutely I do, Your Honor. Well, it hasn't jumped out at me. Could I respond to that on my rebuttal, Your Honor? I will find it for you. I apologize that it's not at fingertips. But there was an I-213 that said they're opting not to do it. That was the gravamen of my – well, not the gravamen, but that was a factor in my equitable estoppel argument. The government knew it had this old outstanding order of deportation. They had it. They presented it to the court. They showed the judge and yet made the representation that they were going to go forward on the basis of a new NTA, and we acted accordingly. It's a steep hill to climb to assert equitable estoppel against the government, isn't it? Hugely steep. But the problem is – and this is the issue that I love. To me – and I apologize for this – to me, I think the jurisdiction is there. Because of the language used in the Alcala and Galindo, that the only reason that they're saying we don't have jurisdiction is because the deportation order would have to be reinstated and it's not automatically effective upon termination. Big contrast to this case. You dress up your issue when you name it equitable estoppel because it's really an argument that it's not fair. The way it happened is not fair. It was like the government sat around and didn't do what it should have done and pay attention to the file, make the decisions in a timely way, so you ought to let us reopen it. Isn't that your case? That is a non-technical phrasing for what I'd like to – You and the district court. What I'd like to accomplish is to get this case reopened so that we can go through with an application, in this case it would be for withholding torture convention, really only torture convention. Okay, so let me just ask the next question out of that series of points. Sure. When Mr. Aguilar failed to provide any information to the Immigration Service in the form of an updated address or to monitor the case himself to do something, don't you think that undermines an equitable claim that you want to assert against the government? He had some responsibilities too, don't you think? I know he was in prison some of the time. Well, that's if we characterize the jurisdiction over the motion to terminate slash equitable estoppel as a motion to reopen, and that's why I'm saying in a lay sense it's what I want to accomplish, but in a tech sense that's not how I'm trying to accomplish it. So I do note I'm down to my two minutes, which I reserve. Answer the question. We'll make sure you get ample time for rebuttal. I appreciate that. Thank you so much, Your Honor. But I do think that they are separate issues, even if the result turns out to be the same. What concerns me the most is if the court is saying we don't have jurisdiction over the issue of equitable estoppel, then we do wind up in what I've been describing in conversations as a donut hole, where this is an issue without saying I've got the facts for it. I am saying I've got the facts for it, but without making that argument here, where we would need evidentiary hearing, we'd be doing this by habeas, but then Real ID Act comes along and says you can't. So how am I going to raise equitable estoppel in the first place? If at all. If at all. Why don't we hear from the government, and then you've got some time. Thank you so much, Your Honor. And I will find that safe for you. Thank you. Good morning. May it please the court. Jessica Doggart for the government this morning. The court should partially dismiss this petition for review because there is no jurisdiction over the order terminating the removal proceedings. The court's cases in Alcala and Galindo Romero are very clear that an order terminating proceedings is not a final order of removal. Although those cases do have the factual distinction in that they involved expedited proceedings or reinstatement proceedings, those factual distinctions aren't relevant here. It doesn't matter. Does the final order in the earlier case, I guess, 1997 removal order, does that spring back to life only after the proceedings are terminated? Your Honor, the best site that I could find for that when preparing for this argument was the regulation at 8 CFR 103.2, and it talks about jurisdiction vesting with the immigration court upon the filing of an NTA. And so the best that I can find was that under the reg that is 8 CFR 239.2, that once the jurisdiction vests with the immigration court upon the filing of an NTA, the only way to get out of that is to terminate the NTA, and that's by motion, and that's under the reg at 239.2. And under that regulation, there's, I believe, seven enumerated reasons why an NTA could be terminated. The sixth one is if the NTA is improvidently issued. Another one, an example would be if somebody left the country and was no longer in the United States, and thus a notice to appear for removal would be unnecessary. So your position, if I understand it, is that the administrative termination of an NTA is not itself appealable. We wouldn't have jurisdiction over that decision. Correct. The termination of an NTA is not appealable. It's similar to the withdrawing of criminal charges in a criminal case. The taking away of the proceedings is not the culmination of proceedings, such that there would be a reviewable final order under the statute, regulations, or case law. In Galindo-Romero, the court really considered all of the kind of factual distinctions. It talked about low-long. It talked about motions to reopen. And the bottom line is that the statute is very clear. It has to be a final order of removal, and there is no finding of removability in the termination order. What would it take to enter a final order of removability? I mean, if we rule in your favor, basically we say we don't have jurisdiction, it puts it back in your court. So what would happen then in terms of entering a final order? Is it just a stone's throw away? No, well, there was the final order. That's why these proceedings were terminated, is that there was the final order of deportation from 2000. That's on the board's decision. And are any further steps required other than the termination of the erroneous proceedings to make that final order implementable? Not that I know of. I think as soon as the jurisdiction is no longer with the immigration court, then the order is executable. From the best that I can find in my case law and in discussions with other attorneys and immigration judges and trying to figure it out, I've never heard of a case where a termination motion has been denied. My understanding is that it's a procedural mechanism in order to get the case out of the immigration court's jurisdiction so that the prior order can be executed. Now, maybe I should know the answer to this, but I don't. Assuming that the prior deportation order is alive again, I noticed that he originally had a voluntary departure. Is that still available to him, or has he lost it? At this point, it's lost by expiration. You can hang on to it with all kinds of appeals and various things and so on. It does not necessarily expire of its own force after 90 days or whatever. In your view, it's gone? I believe so. I would have to look back at the regs from 2000. I know they changed a couple of times in that decade, and my best recollection at this point is that it expired. His voluntary surrender date was pretty quick. Wasn't it something like 30 days or something? I believe it was 60, but, yeah, it's usually between 60 and 90. Unless extended, it's long since expired. Yeah, it's expired. I don't think that that's an option. And without going down the rabbit hole, I think the record's pretty clear that he, although he was incarcerated at the time the board's decision was issued, he was out of incarceration for more than 60 or 90 days and had the opportunity. So if there's any sort of equitable argument there, I don't think that the facts would present that. That question's not immediately in front of us, but I'm trying to figure out the consequence of the various holdings we have available to us. Yeah, I don't believe that that's an issue here. And the other thing that I want to address is that I don't believe that the estoppel claim, whether or not there's a factual basis for it, which I believe there's not, I don't think that that's properly before the court in this termination proceeding. The court has a case, Batista-Luga from 1998, and it's 165 F3rd 35. And in that case, the court talked about recognizing that EORIR has no authority to apply equitable estoppel against the then INS and that any constitutional claims about that must be raised in a petition for review of a motion to reopen. And so the vehicle to get those claims before this court would be in a motion to reopen and then raising it. There may be other jurisdictional issues involved with raising a sua sponte motion to reopen, and, again, those aren't presented here. But there is that safeguard that there are ways to make those claims and have them reviewed. It's just not this way. It's not in this termination order. And if the court has any questions about the motion to reopen, then timely motion to reopen. So does the agency defend equitable estoppel claims with some frequency? Does that happen? I characterized it as a steep hill to climb when I was inquiring of your adversary. So is that impression correct, or do you deal with this a lot? I've seen it before. It's not something we deal with frequently. It is a very steep hill to climb. There has to be affirmative misconduct, and that case law is very well established. Here there's no affirmative misconduct. The I-213, that form that Mr. Brook was referring to, it's on page 830 of the record, and I have a different reading of it. It doesn't specifically say that ICE opted to follow the final order. It just says, upon review of database information, it was determined that subject was amenable to DHS ICE enforcement action with the following status, colon, final order. So it acknowledges that there is a final order. It doesn't say that they're opting to follow one way or the other and issue an NTA. That's drawing words from that document that aren't there. And then the other page I just would like to refer to is page 568 of the record, and that's from the November 4, 2014 hearing. And that's at the point that DHS realized that this prior order wasn't executed. If you read through the transcripts and the pages kind of surrounding that site, it talks about how DHS had been operating on prior master calendar hearings with a temporary file. So it had the 213, but it didn't have all of the documents in the file. At that point, the agency was operating on paper files, so they didn't have a lot of the scanned-in documents that they might have now. And it didn't have until that day of the hearing the entire file, and it just was a realization in the middle of the hearing. So I think to allege affirmative misconduct under those facts is a far cry from really what the record shows. Read the realization line. Do you have that? Read where the light bulb went. Yeah. So the way it happens is at the end of the testimony, at the end of when the DHS attorney goes to take over questioning, it's in line 5 on page 568 that says the DHS attorney says, I do have questions. I'm just a little troubled with the procedural history in this case, and I wanted if we can just discuss this for a moment between the parties. And then they go back and forth about whether or not what the procedural status was of the case. And over the next couple of pages, he talks about not having left the United States, so they realize that the order was not actually executed, and it becomes this, oh, wait, it's not an order that we can reinstate. It's not like Alcala or Galindo Romero where we have an executed order and we have the discretion whether or not to reinstate it and execute that. We actually have the order, and the order wasn't executed, so we still have this good order out there that we don't need to do anything to enforce. So let's just get rid of these proceedings and enforce that order. It's not like we have to start a whole other proceeding to get a different order. And that's really what happened in maybe the four or five pages starting at 568. Thank you. If the Court has any further questions. Okay. Thank you. Thank you. You'd ask to save two. You have one, and if it turns into two, that's okay. I'm sorry? Oh, thank you. Please go ahead. Thank you so much, Your Honor. Let me just start by saying I believe there's something in that I-213 that indicates a little bit differently where it says, unable to obtain removal documents, so the subject is being processed for a notice to appear. But that is actually my point. This is an evidentiary issue. This is not a court that's supposed to be taking evidence. If the Board and the Immigration Court are going to say we have no jurisdiction to consider an argument of equitable estoppel, at what point is evidence going to be presented that the government should be That's not a decision this Court should be able to make or should be asked to make in the absence of an evidentiary record on it. And yet this Court itself has said we have jurisdiction. Strike that. Equitable estoppel does apply in immigration proceedings, and there's precedent in this Court where equitable estoppel as a concept has been applied to removal proceedings. So the question here is, is the Board correct when it says, we don't have jurisdiction to hear it? Now, in a pre-Real ID Act world, I'd say fine. We have a mechanism. In a post-Real ID Act world, I don't really feel we do, not to have an issue like this, which is evidence-bound and ultimately a fact-based determination where you've got no court, no evidentiary court, no trial court, that says we have jurisdiction to take evidence and make factual findings on this issue as to who did what or what was proper or what was improper or what was or wasn't affirmative misconduct. So just let me pick up a miscellaneous point as long as I still can. The factual distinction that's made between, look, we're saying we don't have jurisdiction because it's not a final order, because they still have to reinstate it. That is your two minutes, so if you'd like to sum up. Huge factual distinction, because in reinstatement, you can get your reasonable fear hearing and your reasonable fear interview and your reasonable fear review. You can't do that where it's just an unexecuted word. Thanks very much. Thank both sides for their arguments. And I apologize for going over time. No, no, it's perfectly all right.
judges: W. Fletcher, Ikuta, Barker